Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Brandon L. Pang
Rebecca R. Perez
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUN 0 5 2025

SEAN F. McAVOY, CLERK
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>VICKY VILLALOBOS,<br><br>　　　　　　Defendant. | Case No.: 4:24-CR-6018-MKD-1<br><br>Plea Agreement |

Plaintiff United States of America, by and through Richard R. Barker, Acting United States Attorney the Eastern District of Washington, and Brandon L. Pang and Rebecca R. Perez, Assistant United States Attorneys for the Eastern District of Washington, and Defendant VICKY VILLALOBOS ("Defendant"), both individually and by and through Defendant's counsel, Christine Bennett agree to the following Plea Agreement.

　　　　1.　　**Waiver of Indictment, Guilty Plea, and Maximum Statutory Penalties**

　　　　Defendant agrees to waive indictment by the Grand Jury and enter a plea of guilty to the Information charging Defendant with Distribution of 50 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), a Class A Felony.

PLEA AGREEMENT - 1

As pled in the Information, Defendant has a previous "serious drug felony" conviction as defined by 21 U.S.C. § 802(57) and therefore the following potential penalties apply:

    a. a term of imprisonment of not less than 15 years up to life;

    b. a term of supervised release not less than 10 years;

    c. a fine of up to $20,000,000; and

    d. a $100 special penalty assessment.

Defendant agrees to waive any additional procedural notifications of the statutory penalty enhancement pursuant to 21 U.S.C. § 851

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

    a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

PLEA AGREEMENT - 2

3. <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a. sentencing is a matter solely within the discretion of the Court;

    b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a. pleading guilty in this case may have immigration consequences;

    b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

PLEA AGREEMENT - 3

      c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

      d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

      a.    the right to a jury trial;

      b.    the right to see, hear and question the witnesses;

      c.    the right to remain silent at trial;

      d.    the right to testify at trial; and

      e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    <u>Denial of Federal Benefits</u>

Defendant understands that by entering this plea of guilty, Defendant may no longer be eligible for assistance under any state program funded under part A of

PLEA AGREEMENT - 4

Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

7. Elements of the Offense

The United States and Defendant agree that to convict Defendant of Distribution of 50 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), the United States would have to prove the following beyond a reasonable doubt.

    a. *First*, on or about June 11, 2024, in the Eastern District of Washington, Defendant knowingly distributed a mixture or substance containing methamphetamine to another person;

    b. *Second*, Defendant knew it was methamphetamine or some other prohibited drug; and

    c. *Third*, the methamphetamine Defendant distributed contained at least 50 grams of actual (pure) methamphetamine.

8. Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

PLEA AGREEMENT - 5

In 2023, members of the Federal Bureau of Investigation (FBI) and the Blue Mountain Enforcement Narcotics Team (BENT) began investigating a drug trafficking organization in the Walla Walla, Washington area organized by Defendant Vicky VILLALOBOS. Based on evidence obtained over months of surveillance, trash pulls, various subpoenas and other process, as well as conversations with confidential informants, agents identified Defendant the leader and organizer of the DTO.

In summer 2023, a confidential informant (CI) identified Defendant as a trafficker of drugs to Idaho, Oregon, and Washington. According to the information received, Defendant coordinated multiple drug pick-ups from locations in California, bringing pounds and kilos of methamphetamine and cocaine to the Walla Walla area. The CI provided information about the workings of the organization and identified individuals, including multiple co-defendants, who had a role in assisting Defendant.

*Controlled Buys*

Throughout the investigation, law enforcement conducted multiple controlled buys involving Defendant. Defendant consistently engaged in drug sales herself or would instruct others including several co-defendants to conduct sales on her behalf. Between February 1 and June 11, 2024, a CI engaged in a total of 9 controlled buys. A similar procedure was used during each of the buys, with the CI reaching out to Defendant who then herself sold drugs or would coordinate and direct the sale with a co-defendant and ensure that the deal was made as instructed.

The final of those buys occurred on June 11, 2024. One that date, the CI again contacted Defendant to purchase 1 pound of methamphetamine. Shortly before the buy occurred at Defendant's residence, surveillance agents observed a black vehicle park in the alley behind her residence. Defendant's roommate co-defendant Rogelio GUTIERREZ exited the vehicle carrying something in his

PLEA AGREEMENT - 6

hands, and a short time later returned to the vehicle and drove away. During the time he was away, the CI arrived at the residence to make the purchase. There was no answer at the door, and so the CI contacted Defendant. She indicated GUTIERREZ would be completing the purchase, but he had just left to pick up the order and would return soon. A few minutes later, GUTIERREZ arrived again at the residence and permitted the CI to enter. Pursuant to Defendant's instruction and consistent with what Defendant had told the CI, GUTIERREZ provided 1 pound of methamphetamine to the CI in exchange for $1,200. The DEA Lab has tested the substance purchased and has confirmed 447.7 grams of pure methamphetamine.

The controlled substances sold by or through Defendant during the 9 controlled buys have been tested by the Drug Enforcement Administration Laboratory. In total, the CI purchased 148.75 grams of cocaine, 195.8 grams of fentanyl contained in 1,818 pills, and 893.2 grams of pure methamphetamine (including the above-listed methamphetamine purchased on June 11, 2024).

*Search Warrant at Defendant's Residence*

On July 24, 2024, law enforcement executed a federal search warrant at the residence where Defendant and GUTIERREZ lived. In the kitchen, they located a Ziplock-style bag of .8 pounds of suspected cocaine, a digital scale, a box of Ziplock-style baggies, and $500 in cash, all found in the same drawer. Another 83.8 grams fentanyl pills in two different baggies were in a cabinet above the sink. In Defendant's bedroom, they located black Taurus 9mm handgun bearing serial number TIT24910 with a loaded magazine and a bag containing approximately 67 9mm bullets in the drawer of a nightstand. also located in the room, along with $30,127 in cash. A baggie containing 9.8 grams of suspected cocaine was located outside in the barbeque grill.[1] In the downstairs area occupied by GUTIERREZ,

---

[1] The controlled substances seized from Defendant's residence are in the process of being tested. Based on .8 pounds of cocaine (362 grams), another 9.8 grams of cocaine, and 83.8 grams of fentanyl, the parties agree that 284 KG of converted drug

PLEA AGREEMENT - 7

there was a closet containing a hot water heater. On top of the hot water heater behind a pipe, agents located a hidden firearm, determined to be a Black Keltec 9mm handgun bearing serial number RHC16 with a loaded magazine.

Additionally, agents seized cell phones belonging to Defendant and GUTIERREZ. Defendant's phone was later searched pursuant to federal warrant. The conversation contained within the phone was consistent with drug trafficking, including the use of coded language referring to controlled substances or amounts for sale. Multiple individuals reached out to Defendant requesting drugs. One individual asked for "$400 worth" of pills, to which Defendant responded that she only had "hydros". Several others requested various amounts, to which Defendant consistently replied that she could fulfill the request.

Agents also located within the phone a photograph taken June 6, 2024 of a pistol which appeared to be a "ghost gun" (a privately made firearm lacking a serial number). The pistol had an attachment on the slide commonly known as a "glock switch" which enables the pistol to function as a fully automatic pistol similar to a machine gun. Based on the background, the photographs were taken inside Defendant's home.

Defendant stipulates and agrees that between February and June of 2024, she herself distributed and organized others to distribute the controlled substances as described above, to include the 50 grams of actual (pure) methamphetamine during the controlled buy on June 11, 2024.

9. The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the

---

weight is a reasonable calculation of the drugs seized from Defendant's residence. Once lab results are received, the parties will update the Court and probation if lab results reflect a different converted drug weight.

PLEA AGREEMENT - 8

charges in the Indictment dated June 21, 2024 in 4:24-CR-6018-MKD which pertain to this Defendant unless Defendant breaches the Plea Agreement.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

10. <u>United States Sentencing Guidelines Calculations</u>

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a. *Base Offense Level*

The United States and the Defendant agree and stipulate that at least at least 10,000KG but less than 30,000KG of converted drug weight was distributed and possessed in furtherance of the criminal activity jointly undertaken by the Defendant and her co-conspirators and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to USSG §1B1.3. Therefore, the parties agree that based upon overall quantities of the drugs involved, Defendant's base offense level is 34. *See* USSG §2D1.1(a)(5), (c)(3).

b. *Special Offense Characteristics*

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because Defendant possessed a firearm in connection with the offense. *See* USSG §2D1.1.

The parties agree Defendant is not eligible for "safety valve" pursuant USSG §2D1.1(b)(18), 18 U.S.C. § 3553(f), and USSG §5C1.2.

PLEA AGREEMENT - 9

The parties make no other agreements regarding special offense characteristics.

  c. *Role Adjustment*

The parties agree that Defendant receive a 2-level increase based on her role as an organizer, leader, or manager in the criminal activity. USSG §3B1.2(c).

  d. *Acceptance of Responsibility*

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

  i. accepts this Plea Agreement;
  ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;
  iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;
  iv. provides complete and accurate information during the sentencing process; and
  v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

  e. *Agreements Regarding Representations to the Court*

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United

PLEA AGREEMENT - 10

States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

Regarding all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

    i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

    ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

    iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

    iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

    v. The United States and Defendant may each respond to any arguments presented by the other;

    vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the

PLEA AGREEMENT - 11

|   |   |   |
|---|---|---|
| 1 |   | sentence recommended by the United States on any basis, |
| 2 |   | including arguments for a lower offense level, a lower |
| 3 |   | criminal history calculation, the application or non- |
| 4 |   | application of any sentencing enhancement or departure, |
| 5 |   | and/or any variance from the Guidelines range as |
| 6 |   | calculated by the Court; |
| 7 | vii. | In order to support the defense sentencing |
| 8 |   | recommendation as set forth herein, Defendant may |
| 9 |   | oppose and argue against any argument by the United |
| 10 |   | States, or any recommendation for any sentence higher |
| 11 |   | than the sentence recommended by the defense on any |
| 12 |   | basis, including arguments for a higher offense level, a |
| 13 |   | higher criminal history calculation, the application or |
| 14 |   | non-application of any sentencing enhancement or |
| 15 |   | departure, and/or any variance from the Guidelines range |
| 16 |   | as calculated by the Court; |
| 17 | viii. | The United States may make any sentencing arguments |
| 18 |   | the United States deems appropriate so long as they are |
| 19 |   | consistent with this Plea Agreement, including arguments |
| 20 |   | arising from Defendant's uncharged conduct, conduct set |
| 21 |   | forth in charges that will be dismissed pursuant to this |
| 22 |   | Plea Agreement, and Defendant's relevant conduct; and |
| 23 | ix. | Defendant may make any sentencing arguments |
| 24 |   | consistent with this Plea Agreement Defendant deems |
| 25 |   | appropriate. |

f.  *No Other Agreements*

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or

PLEA AGREEMENT - 12

variances.

      g.    *Criminal History*

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

11.    Incarceration

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

The United States agrees to recommend the low end of the Guidelines, as calculated by the United States.

Defendant may recommend any legal sentence.

PLEA AGREEMENT - 13

12. <u>Supervised Release</u>

The United States and Defendant each agree to recommend ~~5~~ 10 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

    c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

13. <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for

PLEA AGREEMENT - 14

Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. <u>Abandonment of Firearms and Ammunition</u>

Defendant does not claim an interest in the following listed assets and agrees to abandon the assets to the Oregon State Police:

- a black Taurus 9mm handgun bearing serial number TIT24910 with a loaded magazine;

- a bag containing approximately 67 9mm bullets, and

- a Black Keltec 9mm handgun bearing serial number RHC16 with a loaded magazine

Defendant agrees to take all steps as requested by the United States and the Oregon State Police to effectuate the abandonment of the assets to the Oregon State Police and hereby agrees to execute any forms and pleadings necessary to effectuate such abandonment.

Defendant consents to the disposal, including destruction or return to a lawful owner, of the assets. Defendant agrees to hold all law enforcement agents/officers, and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and abandonment of any asset covered by this agreement.

Defendant waives any right she might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the United States and/or the Oregon State Police might take, in their sole discretion, to carry out the abandonment and disposition of the firearms and ammunition. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment and disposition of the firearms and ammunition, including any such claim for attorney fees and litigation costs.

PLEA AGREEMENT - 15

### 15. Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

### 16. Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

### 17. Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

### 18. Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any aspect of Defendant's conviction and/or the sentence the Court imposes on any grounds.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

PLEA AGREEMENT - 16

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

    b. The United States may prosecute Defendant on all available charges;

    c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d. The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any

PLEA AGREEMENT - 17

objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20. <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Richard R. Barker
Acting United States Attorney

_____        6/5/25
Rebecca R. Perez                 Date
Assistant United States Attorney

I have read this Plea Agreement, and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than

PLEA AGREEMENT - 18

those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____      6/5/25
Vicky Villalobos                                          Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____      6/5/25
Christine Bennett                                        Date
Attorney for Defendant

PLEA AGREEMENT - 19